The STATE of Ohio, Appellee,

v.

KERBY, Appellant.

[Cite as *State v. Kerby,* 162 Ohio App.3d 353, 2005-Ohio-3734.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 03CA0048.

Decided July 15, 2005.

354

356

Stephen A. Schumaker, Clark County Prosecuting Attorney, and Darnell E. Carter, Assistant Prosecuting Attorney, for appellee.

Robert A. Brenner, for appellant.

GRADY, Judge.

{¶ 1} Defendant, William R. Kerby, appeals from his convictions for aggravated murder with a firearm specification, murder, aggravated robbery, felonious assault, and tampering with evidence, and the sentences imposed on his convictions pursuant to law.

{¶ 2} On appeal, defendant argues that his appointed attorney was ineffective for failure to enforce his speedy-trial rights, that the trial court erred when it denied his motions to suppress evidence, and that the sentences imposed are invalid because the trial court failed to make the required statutory findings.

{¶ 3} We find that defendant's speedy-trial rights were not violated. Therefore, no ineffective assistance in that connection is demonstrated. We also find that the sentences the court imposed are supported by the necessary findings.

{¶ 4} With respect to his motions to suppress evidence, we find no error in the trial court's denial of defendant's motion to suppress evidence of incriminating statements he made to the press while in custody. However, we find that the trial court erred when it denied defendant's motion to suppress his confession to police officers, which was procured in violation of his Fifth Amendment right against self-incrimination.

{¶ 5} Because defendant's convictions were entered on his pleas of no contest after his motion to suppress evidence of his confession was erroneously denied, they must be vacated and the case remanded for further proceedings on the charges against him.

## Facts

{¶ 6} On November 27, 2001, three men entered the Family Video Store on Selma Road in Springfield and attempted an armed robbery. One of the store employees, Chad Kautz, was shot and killed by the perpetrators. Another employee, Matthew Brown, was injured.

{¶ 7} Defendant, William Kerby, was arrested on December 13, 2001, on suspicion of committing the armed robbery and the other crimes arising from it. One of the other suspects arrested was defendant's brother, Carlos Kerby. The third was Jawhan Massey.

{¶ 8} Defendant was brought to police headquarters, where officers advised him of his *Miranda* rights. Defendant Kerby acknowledged and waived his rights. Police interrogation commenced, but shortly after it did, defendant invoked his right to remain silent, indicating that he wished to answer no further questions. The interrogation was terminated.

{¶ 9} Police interrogation of defendant Kerby was resumed several hours later, allegedly at his instance. Defendant made statements incriminating himself in the crimes committed at the Family Video Store on November 27, 2001.

{¶ 10} The day following his confession to police and while he was in the county jail, defendant agreed to a press request for an interview. Police recorded the interview with a video camera. Defendant made further incriminating statements in the press interview.

{¶ 11} Defendant was indicted on multiple offenses on December 26, 2001. The Clark County Public Defender was appointed to represent him. The court set a trial date of February 13, 2002. Several days later defense counsel moved for a continuance. The motion was heard on February 5, 2002. At that hearing, defendant also waived his speedy-trial rights. The trial court subsequently set a new trial date of September 3, 2002.

{¶ 12} The assigned trial date, September 3, 2002, passed without a trial being held. Thereafter, defendant filed another speedy-trial waiver as well as several procedural motions, including motions to suppress evidence, which operated to toll defendant's statutory speedy-trial time.

{¶ 13} On July 15, 2003, defendant entered pleas of no contest to the offenses with which he was charged, after the firearm specifications attached to all but the aggravated-murder charge were deleted by the state. The court found defendant guilty of all the charges and sentenced him to a total aggregate sentence of life imprisonment with an eligibility for parole after 29 years. Defendant filed a timely notice of appeal.

## FIRST ASSIGNMENT OF ERROR

{¶ 14} "Mr. Kerby was denied the effective assistance of counsel as guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution by virtue of his attorney's failure to move to dismiss the instant case in which his right to a speedy trial as guaranteed by the statutes of Ohio and the Constitutions of the United States and Ohio was violated."

{¶ 15} Defendant argues that his trial counsel performed in a deficient manner because he failed to file an R.C. 2945.73 motion for discharge following a violation of defendant's statutory right to a speedy trial. In support of that argument, defendant contends that an earlier waiver of his speedy-trial right was ineffective for that purpose.

{¶ 16} In order to demonstrate ineffective assistance of trial counsel, defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation and that defendant was preju-

diced by counsel's performance; that is, a reasonable probability exists that but for counsel's unprofessional errors the result of defendant's trial or proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶ 17} The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial. In Ohio, that right is implemented by the statutory scheme imposing specific time limits in R.C. 2945.71 et seq. *State v. Pachay* (1980), 64 Ohio St.2d 218, 221, 18 O.O.3d 427, 416 N.E.2d 589. The particular rights that that statutory scheme confers attach when a defendant is arrested on criminal charges. They continue so long as those charges remain pending, until his criminal liability is determined by trial or a plea of guilty or no contest.

{¶ 18} R.C. 2945.71(C)(2) requires the state to bring a person against whom a felony charge is pending to trial within 270 days after the person's arrest. Each day the person is held in jail in lieu of bail on the pending charge is counted as three days. R.C. 2945.71(E). For a violation of the rights these sections confer, a defendant may seek a discharge from criminal liability pursuant to R.C. 2945.73.

{¶ 19} Defendant was held in jail in lieu of bail solely on these charges from the date of his arrest, December 13, 2001. Therefore, the triple-count provision in R.C. 2945.71(E) applies, and the state was required to bring defendant to trial within 90 days after his arrest, unless the time for trial was extended pursuant to R.C. 2945.72. At the time defendant entered his no-contest pleas to the charges in this case, on July 15, 2003, 525 days had elapsed since his arrest. Nevertheless, defendant's attorney filed no motion for discharge.

{¶ 20} The time for bringing defendant to trial began running on December 14, 2001, the day after his arrest. On December 26, 2001, defendant was formally indicted on multiple felony charges. Defendant was arraigned on December 28, 2001. Defendant filed a demand for discovery on January 2, 2002, 20 days following his arrest. The demand tolled or extended the time for trial from that date until the state provided the discovery requested. *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159. As of February 5, 2002, when the hearing on defendant's motion for a continuance was held, discovery had not yet been provided by the state.

{¶ 21} On February 5, 2002, defendant filed a written motion by and through counsel requesting a continuance of the trial that the trial court had set for February 13, 2002. That motion was also heard on February 5, 2002. Defendant's request for a continuance was for the express purpose of obtaining

additional time to prepare for trial, which when granted would toll or extend the time for trial from the date of the request until the new trial date—in other words, for the period of the continuance granted at defendant's own request. R.C. 2945.72(H). The trial court granted defendant's request but waited several days before setting a new trial date of September 3, 2002.

{¶ 22} Even though defendant's request for a continuance tolled the time within which the state was required to bring defendant to trial to a new trial date, defendant's attorney also expressed a willingness to waive defendant's right to a speedy trial in order to obtain more time to prepare. The court took up that offer and proceeded to question defendant concerning his knowledge and understanding of the effects of his speedy-trial waiver. The court's explanation confused the effects of a speedy-trial waiver with the tolling or extension of the time for bringing defendant to trial that resulted from the continuance he requested. Because of that, defendant argues, the waiver of his speedy-trial rights was ineffective.

{¶ 23} The transcript of the hearing of February 5, 2002, contains the following colloquy between defendant's attorney, the court, and defendant Kerby:

{¶ 24} "MR. MERRELL: Well, we're willing to waive time, Your Honor. I don't have discovery; and, quite frankly, having been appointed to all three men, I tried to back off and not talk to any three of them, any one of them until I had a confirmed who I was going to represent so I'm not prepared to go to trial.

{¶ 25} "I've discussed that with William. He's willing to waive a speedy trial so that I can get prepared.

{¶ 26} "THE COURT: Is the trial date the 19th?

{¶ 27} "THE BAILIFF: 13th.

{¶ 28} "THE COURT: February 13 so you're asking that the trial of February 13 be continued to a later date?

{¶ 29} "MR. MERRELL: Correct, yes.

{¶ 30} "THE COURT: Mr. Kerby, did you understand that your attorney, Mr. Merrell, is asking that your trial date be continued? You're scheduled for trial February 13.

{¶ 31} "THE DEFENDANT: Yes, sir.

{¶ 32} "THE COURT: That's next week, and Mr. Merrell wishes this trial date continued.

{¶ 33} "Do you understand that?

{¶ 34} "THE DEFENDANT: [Nods head.]

{¶ 35} "MR. MERRELL: You have to answer. You can't just nod.

{¶ 36} "THE DEFENDANT: Oh, yes.

{¶ 37} "THE COURT: I want to advise you that you have a constitutional right to a speedy trial. Under the law of Ohio where you're incarcerated in the jail unable to post a bond, you have a right to be brought to trial within 90 days of the day of your arrest.

{¶ 38} "Do you understand that?

{¶ 39} "THE DEFENDANT: Yes.

{¶ 40} "THE COURT: Now, if you ask for a continuance, then the date may be extended. Time may be extended beyond 90 days.

{¶ 41} "Do you understand that?

{¶ 42} "THE DEFENDANT: Yes.

{¶ 43} "THE COURT: You're waiving your right to a speedy trial to a limited extent. That time can be extended beyond the 90 days when you make this motion, and it's granted.

{¶ 44} "THE DEFENDANT: Yes.

{¶ 45} "THE COURT: You understand that? Have you discussed this with Mr. Merrell?

{¶ 46} "THE DEFENDANT: Yes.

{¶ 47} "THE COURT: Do you want to waive your right to speedy trial and make this motion to continue the trial?

{¶ 48} "THE DEFENDANT: Yes.

{¶ 49} "THE COURT: All right. And you understand your attorney asked for this based on the fact that he is not ready at this time to proceed with your trial. He has not completed necessary discovery. That's the reason he's making that motion.

{¶ 50} "Do you understand that?

{¶ 51} "THE DEFENDANT: Yes.

{¶ 52} "THE COURT: Okay. So this is with your request that the case be continued.

{¶ 53} "THE DEFENDANT: Yes."

{¶ 54} In addition to acknowledging a waiver of his speedy-trial right orally in open court at the February 5, 2002 hearing, defendant signed an entry that his attorney prepared, which the trial court signed and filed two days later on February 7, 2002, finding that his speedy-trial right was waived.

{¶ 55} Two weeks after the hearing, the trial court set a new trial date of September 3, 2002. However, no trial occurred on September 3, 2002, and there are no motions or journal entries in the record that explain why trial did not commence on that date or was continued to a later date. If, as defendant argues, his waiver of his right to a speedy trial on February 5, 2001, was ineffective, the time for bringing defendant to trial began running again on September 4, 2002. If so, and counting the 20 days chargeable to the state from defendant's arrest until his motion for continuance was filed, the state had 70 days remaining to bring defendant to trial.

{¶ 56} Nothing appears in the docket and journal entries in this case that would toll the running of the speedy-trial time from September 4, 2002, until November 27, 2002, the date defendant filed a motion to suppress evidence. If defendant's speedy-trial right was not waived, the last (90th) day for bringing defendant to trial within the speedy-trial limits of R.C. 2945.71 expired on or about November 12, 2002. No motion for discharge was filed then or thereafter.

{¶ 57} As we noted above, R.C. 2945.71 et seq. implements a defendant's constitutional right to a speedy trial. It has two beneficial purposes. First, satisfying its provisions creates a presumption that the constitutional right is likewise satisfied. Second, compliance with its requirements prevents defendants from languishing in jail for long periods of time, a burden on the taxpayers.

{¶ 58} In modern and more advanced local court systems, compliance with the statutory speedy-trial requirements is aided by early discovery and pretrial conferences held soon after the indictment to secure an early trial date with which both sides can comply. That is not the practice in the general division of the Clark County Court of Common Pleas.

{¶ 59} In the present case, the first trial date was apparently set without counsel's participation; the County Public Defender had been appointed to represent all three defendants charged with offenses arising from the same shooting, and so some continuance was inevitable. After a continuance was granted on February 5, 2002, a new trial date of September 3, 2002, was set, 210 days after the continuance was granted. Why such an extended period was ordered is not evident.

{¶ 60} Defendant was not brought to trial on September 3, 2002, and there are no journal entries in the record continuing the trial date further. When he eventually entered his no-contest pleas on July 15, 2003, he had been incarcerated 525 days. At the daily cost for incarceration reported by the Sheriff of Clark County, $60 per day, defendant's total jail stay until his no-contest pleas were entered cost the taxpayers of Clark County approximately $31,500.

{¶ 61} The issue for us is not the expenditure of taxpayer funds, however. The issue is whether, as defendant argues, the court's explanation of the effects of defendant's speedy-trial waiver, being conflated as it was with the tolling or extension of time provisions of R.C. 2945.72(H) resulting from defendant's request for a continuance of the trial, prejudicially misinformed him concerning the duration and extent of his waiver, and thereby undermined the knowing, intelligent, and voluntary character of that speedy-trial waiver, rendering the waiver invalid. If so, the time for bringing defendant to trial continued to run unabated from September 4, 2002, when the speedy-trial time resumed running, until November 12, 2002, when it elapsed. In that event, a violation of defendant's R.C. 2945.71 speedy-trial rights occurred in this case. If that occurred, defense counsel's failure to move then for defendant's discharge pursuant to R.C. 2945.73 would constitute ineffective assistance under the rule of *Strickland* and *Bradley.* On the other hand, if, as the state argues, the hearing of February 5, 2002, and the corresponding entry of February 7, 2002, constituted a valid waiver of defendant's speedy-trial rights of unlimited duration, then no speedy-trial violation occurred because defendant never withdrew that waiver or demanded a trial. *State v. O'Brien* (1987), 34 Ohio St.3d 7, 516 N.E.2d 218.

{¶ 62} At the outset, we emphasize that we strongly disapprove of conditioning continuances requested by a defendant on a waiver of his speedy-trial rights. Not only is that generally unnecessary because of the extension of time resulting from the continuance, but as a practice it undermines the purpose of Ohio's statutory speedy-trial scheme and R.C. 2945.72 in particular. Furthermore, as such ploys sometimes do, see *State v. Hughey* (1996), 115 Ohio App.3d 664, 685 N.E.2d 1318, it confused the trial court itself when it attempted an explanation. Speedy-trial waivers are distinct from the provisions in R.C. 2945.72 that extend the statutory speedy-trial time by tolling it. A waiver relinquishes the right, at least until the waiver is withdrawn. Tolling doesn't waive the speedy-trial right, however. And, in most circumstances where R.C. 2945.72 applies, it allows sufficient time to avoid any prejudice the underlying request or order might create.

{¶ 63} Nevertheless, the pivotal issue in this case is whether defendant's apparent waiver of his speedy-trial rights was valid and effective for that purpose. A waiver of speedy-trial rights must be knowing, intelligent, and voluntary, which includes an understanding of both the effect of the waiver and the duration and extent of that waiver. *State v. Adams* (1989), 43 Ohio St.3d 67, 538 N.E.2d 1025.

{¶ 64} The state puts great emphasis on the written "waiver" that defendant and his attorney both signed and the trial court also signed and filed

on February 7, 2002. However, by its own terms that writing is no more than a finding by the court that defendant had waived his speedy-trial rights in court at the February 5, 2002 hearing. Therefore, if that hearing was inadequate to waive defendant's speedy-trial rights, the writing is likewise inadequate.

{¶ 65} Defendant argues that the court's explanation of the effect of his waiver of speedy-trial rights at the February 5, 2002 hearing misled him concerning the extent or duration of his waiver because the court suggested that the right was being waived to a limited extent, consistent with the tolling of time resulting from defendant's requested continuance. The court did explain that the continuance defendant had requested would extend his statutory speedy-trial time "beyond 90 days," which is correct. The court further explained that by additionally waiving his right to a speedy trial the defendant was "waiving your right to a speedy trial to a limited extent. That time can be extended beyond the 90 days when you make this motion and it's granted." The defendant acknowledged that understanding.

{¶ 66} The court's explanation conflated the effect of a continuance with that of a speedy-trial waiver. However, and even though it suggested that the waiver was "limited," which is incorrect, the court never explained or suggested how it would be limited. Like the effect of the continuance, as the court had explained it, the waiver would extend defendant's speedy-trial time beyond 90 days, and it did. The only difference is that the extension resulting from the continuance was terminable while the waiver was continuing, at least until withdrawn, and the court did not address those distinctions.

{¶ 67} Accordingly, we conclude that defendant's waiver of his speedy-trial rights at the February 5, 2002 hearing was not impaired by the court's explanations and was therefore knowing, intelligent, and voluntary, and of unlimited duration. Defendant's trial counsel did not perform deficiently in failing to move later for his discharge based upon a violation of defendant's statutory speedy-trial rights because defendant had waived the rights that R.C. 2945.71 confers.

{¶ 68} The first assignment of error is overruled.

## SECOND ASSIGNMENT OF ERROR

{¶ 69} "The trial court erred in overruling defendant's motion to suppress his statement he made to police after police failed to scrupulously honor his assertion of his right to cut off questioning."

## THIRD ASSIGNMENT OF ERROR

{¶ 70} "Mr. Kerby's trial attorney provided ineffective assistance of counsel when he failed to argue that Mr. Kerby's statement he made to police should

have been suppressed because the police had failed to scrupulously honor his right to cut off questioning."

{¶ 71} The other suspects in this case included Jawhan Massey and defendant's brother, Carlos Kerby. At around 7:30 a.m. on December 13, 2001, defendant was interviewed by Sgt. Eggers and Captain Moody of the Springfield Police Division following defendant's written waiver of his *Miranda* rights. After defendant's interrogation began, defendant indicated that he didn't want to answer any questions about the robbery and shooting at the Family Video store, and the officers then terminated their interrogation. Defendant was returned to his holding cell at police headquarters. Subsequently, as Det. Hicks was walking Carlos Kerby from police headquarters to the county jail, they walked past defendant's holding cell. Carlos Kerby called out to defendant to "do the right thing."

{¶ 72} At around 11:30 a.m., Det. Hicks came to defendant's holding cell to walk defendant to the jail. According to Hicks's testimony at the suppression hearing, as they were walking over to the jail defendant said to Hicks, "I'd like to talk with you." Det. Hicks then took defendant back to one of the interview rooms at police headquarters. The events that occurred there were videotaped. After defendant executed another written waiver of his *Miranda* rights, the following exchange took place:

{¶ 73} "CAPTAIN MOODY: Yeah, I mean, earlier we shut this down because you didn't want to talk anymore. And it's my understanding on the way to the jail, you asked to speak to us once again.

{¶ 74} "DEFENDANT WILLIAM KERBY: It's what you say, at least my time, chance, whatever, to help me out.

{¶ 75} "DETECTIVE HICKS: Well, I'm just—what I said, William, was that Jawhan is trying to lay most of the blame on you and—and he's willing to stand up for that, that you did it.

{¶ 76} "But all the information we got is saying that you weren't the one who pulled the trigger, that he was the one who pulled the trigger; but the only one we've got to confirm that so far is your brother.

{¶ 77} "Now, I mean, it'll look better on you if you tell the truth too because all we got now is his side of the story and your brother's; but we don't have what William said occurred. So that's what we're trying to get, what William said occurred; and it will look better for you in the long run to cooperate.

{¶ 78} "CAPTAIN MOODY: I mean, bottom line, Will, what we're after is the truth. It's what we talked about earlier this morning. I mean, that's way [sic[ you heard from your father and your mother.

{¶ 79} "And to be quite honest, that's what Carlos did. I mean, your baby brother, I mean, you are so fortunate. He—he is—he has got a lot of moxie.

{¶ 80} "DEFENDANT WILLIAM KERBY: The story went like this * * *."

{¶ 81} Defendant then made statements incriminating himself in the robbery and shooting at the Family Video store.

{¶ 82} Defendant filed a motion to suppress both the statement he made to police and statements he made the following day in an interview with the news media that police videotaped, arguing that in both instances his *Miranda* rights were violated. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Defendant also claimed that police did not honor his request for counsel prior to questioning, in violation of *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378.

{¶ 83} Defendant's motion to suppress his statement to police did not cite *Michigan v. Mosley* (1975), 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313, or the issue discussed therein: the requirement that police must scrupulously honor a defendant's Fifth Amendment right to cut off questioning. In his third assignment of error on appeal, defendant argues that his trial attorney was ineffective for failing to raise a *Mosley* challenge.

{¶ 84} We are satisfied by our examination of the record of the suppression hearing that defendant did raise and argue a *Mosley* issue, which the trial court considered and rejected. Defendant argued that after he invoked his right to remain silent and not answer police questions, Det. Hicks told him that the other codefendants had implicated him as the shooter. In that regard, defendant concedes in his appellate brief that defense counsel arguably raised a *Mosley* issue in his motion to suppress. Thus, defendant's claim in his third assignment of error that his trial counsel performed in a deficient manner because he failed to raise and argue a *Mosley* issue in his motion to suppress is not supported by the record. The third assignment of error is overruled.

{¶ 85} Defendant argues in his second assignment of error that the trial court erred in failing to suppress the incriminating statements he made to police during his second interrogation on December 31, 2001, because police did not scrupulously honor the right he had invoked to cut off questioning, violating his Fifth Amendment right to remain silent. In its general finding on the issues raised by his motions to suppress evidence, the trial court merely stated that defendant's Fifth Amendment rights "were respected."

{¶ 86} In *Michigan v. Mosley, supra,* the Supreme Court held that the admissibility of incriminating statements obtained after a person in police custody has initially decided to remain silent and not answer questions depends upon whether his or her right to cut off questioning was "scrupulously honored" by

police.    423 U.S. at 104, 96 S.Ct. 321, 46 L.Ed.2d 313.    In concluding that Mosley's *Miranda* rights, particularly his right to remain silent, had not been violated, the Supreme Court noted that when the defendant said that he did not want to discuss certain robberies, police immediately ceased interrogation and did not thereafter try to resume that questioning or persuade defendant to change his mind.    The subsequent interrogation occurred after a significant lapse of more than two hours' time, concerned another crime wholly unrelated to the robberies, was conducted in a different location by a different police officer, and was preceded by a fresh set of *Miranda* warnings.    Id.

{¶ 87} The circumstances of the second interrogation here differ from those in *Mosley* in several respects.    Nevertheless, per *Mosley,* once defendant Kerby invoked his Fifth Amendment right, police were obligated to scrupulously honor the right he invoked.    In our view, that means that police ought not resume the interrogation, either directly or indirectly, by encouraging the suspect to tell his side of the story in order to help himself, which is the functional equivalent of interrogation.    *Rhode Island v. Innis* (1980), 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297.[1]    In either event, once a defendant has invoked the Fifth Amendment right, on a motion to suppress alleging that the right was violated, it becomes the state's burden to show that the right was scrupulously honored. *Mosley.*

{¶ 88} The state argues that the requirements of *Mosley* were met because when defendant indicated that he didn't want to answer any questions about the Family Video store robbery and shooting, police ceased interrogation.    Then, some three hours later, defendant initiated further conversation with the police when he told Det. Hicks he wanted to speak with him during the second interrogation.    Defendant was given a fresh set of *Miranda* warnings, and he waived his rights in writing before being questioned again about the Family Video robbery and shooting, in which he then admitted his participation.

{¶ 89} The trial court made no particularized findings concerning those matters, concluding only that defendant's rights were respected when it denied his motion to suppress evidence.    The court's cryptic finding might imply that even if defendant's statements during the second interrogation were the product of inducements by police, no violation occurred.    Alternatively, it might imply that those inducements, which Det. Hicks related when the second interview began, only followed defendant's request to speak with police.    Based on that finding,

---

1.    *Innis* involved invocation of the Sixth Amendment right to counsel, not the Fifth Amendment right to remain silent invoked in *Mosley.*    Nevertheless, in the context of *Miranda,* further inducements to speak undermine invocation of either right after the advisory warnings are given.

the court might then have concluded that the requirements of *Mosley* were met. Because the court's decision to overrule the motion accords with such a finding, we must presume that the court made that finding on the evidence before it.

{¶ 90} In reviewing a trial court's decision on a motion to suppress, we must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Satterwhite* (1997), 123 Ohio App.3d 322, 704 N.E.2d 259. In this case, however, the evidence in the record belies the trial court's implicit finding that defendant's decision to resume the interrogation was his own free and independent choice, not the product of any conduct on the part of police.

{¶ 91} If Hicks's version of events is true, defendant would have had no reason, when Captain Moody asked the defendant whether he had asked to speak with police again, not to respond to that inquiry but, as he did, instead to turn to Hicks and make a statement that, though garbled, plainly indicates that he was motivated by statements Hicks had made to him. Then, rather than first clarifying the vital matter of whether defendant had asked to speak with police, Hicks gave an extensive explanation of what he said to defendant concerning the benefits he might realize by talking. The sequence and substance of those remarks compel a conclusion that the exchange was initiated by Hicks, not by the defendant. Because the statements Hicks admittedly made could have no purpose other than trying to persuade defendant to resume the interrogation he had earlier cut off, they were the functional equivalent of further interrogation on the same matter. The further question is whether in those circumstances the requirements of *Mosley* were satisfied.

{¶ 92} We previously applied the rule of *Mosley* in *State v. Fairchilds* (June 12, 1998), Miami App. No. 97CA45, 1998 WL 310740. There, the defendant had invoked his right to remain silent "at that time" when *Miranda* warnings were given. Interrogation then ceased. A week later, the interrogating officer approached the defendant in the jail and, after first determining that the defendant recalled his *Miranda* rights, asked whether he had decided to make any statements. The defendant then broke down and confessed to the sex offenses of which he was convicted. On appeal, we held that the inquiry the officer made was consistent with the defendant's invocation a week before of his right to remain silent "at that time" and therefore did not undermine the voluntariness of the decision the defendant later made to waive the right he'd invoked. We also noted that, per *Mosley*, "*Miranda* does not impose a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances." *Mosley*, 423 U.S. at 102, 96 S.Ct. 321, 46 L.Ed.2d 313.

{¶ 93} Here, as in *Mosley*, police immediately terminated their interrogation after defendant invoked his Fifth Amendment right. And about the same period of time passed before interrogation resumed. However, the second interrogation was led by the same officer, Captain Moody, in the same location as the first. Most significant, and unlike *Mosley*, the second interrogation involved the very same criminal conduct concerning which the accused had invoked the Fifth Amendment right. And, unlike *Fairchilds*, the defendant's waiver was procured though extensive explanations of the benefits he might realize. Therefore, we cannot find that the state, upon defendant's motion to suppress evidence, met its burden of showing that defendant's invocation of his Fifth Amendment right was scrupulously honored by police, so that his subsequent waiver of the right was voluntary.

{¶ 94} The trial court's benign and general finding that defendant's rights "were respected" is not supported by competent, credible evidence in the record. Therefore, we are not bound by the finding. On the record before us, and for the reasons stated above, we conclude that the trial court erred when it denied defendant's motion to suppress evidence of the statements he made to police during the second interrogation on December 31, 2001.

{¶ 95} The second assignment of error is sustained. Defendant's convictions will be reversed and vacated and the case will be remanded to the trial court for further proceedings consistent with this opinion.

## FOURTH ASSIGNMENT OF ERROR

{¶ 96} "Mr. Kerby's trial attorney provided ineffective assistance of counsel when he failed to argue that Mr. Kerby's statement to news reporters should have been suppressed as fruit of the first illegally obtained confession."

{¶ 97} Defendant was interviewed by the news media at the jail on December 14, 2001, the day following his confession to police. Defendant argues that the statements he made during his interview with the news media were fruit of the illegal confession he gave to police the previous day. Therefore, his trial counsel rendered ineffective assistance by failing to raise and argue this issue. We disagree.

{¶ 98} The essence of defendant's claim is that the statements he gave to police on December 13, 2001, which we have concluded were procured in violation of defendant's Fifth Amendment rights, tainted the subsequent statements defendant gave to the news media the following day and preclude the admissibility of those statements. According to defendant, had police scrupulously honored his right to cut off questioning about the Family Video shooting on December 13, 2001, as required by *Michigan v. Mosley*, he would not have given a statement to

the news media the next day. Defendant claims that he gave the statement to the news media only because he had already "let the cat out of the bag" and confessed. Defendant cites *United States v. Bayer* (1947), 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 in support of his argument.

{¶ 99} The record before us does not support defendant's claim that he decided to speak with the news media only because he had already confessed to police. Furthermore, the case defendant cites does not support his position. As the Supreme Court noted in *Bayer*, once a defendant confesses and the cat is out of the bag, in that general sense a later confession can always be looked upon as the fruit of the first confession. "But this court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed." *Id.* at 540–541, 67 S.Ct. 1394, 91 L.Ed. 1654. That is the situation here.

{¶ 100} Defendant's statements to police on December 13, 2001, are inadmissible because they were procured by police custodial interrogation after defendant initially invoked his *Miranda* rights. As we discuss in the fifth assignment of error, however, the statements defendant made to the news media on December 14, 2001, were not the product of questioning or interrogation by any law-enforcement officer or other person clothed with the power of the state. In those circumstances, the safeguards in *Miranda* do not apply.

{¶ 101} Simply put, the defect that invalidates the confession defendant made on December 31, 2001, has no application whatsoever to the statements defendant made to the news media the next day, which are admissible. Those statements to the media are in no way the fruit of or tainted by the earlier improper confession obtained by police. Accordingly, defense counsel did not perform deficiently by failing to raise this issue.

{¶ 102} The fourth assignment of error is overruled.

## FIFTH ASSIGNMENT OF ERROR

{¶ 103} "Mr. Kerby's trial attorney provided ineffective assistance of counsel when he failed to argue that Mr. Kerby's statement to news reporters should have been suppressed since police failed to administer *Miranda* warnings after they brought the reporters and Mr. Kerby together so the reporters could ask him about the charges against him."

{¶ 104} On December 14, 2001, the day after defendant's arrest, representatives of the news media contacted the sheriff's office and asked to interview defendant. Sheriff's deputies working at the jail relayed that request to defendant, who then agreed to be interviewed by the news media. After the deputies

obtained defendant's signature on a form wherein he voluntarily consented to the interview with the news media and further agreed not to hold the sheriff's office liable for any consequences of that interview, police prepared the chapel area of the jail for the interview and set up their own video camera to record the proceedings.

{¶ 105} Police brought defendant to the interview and introduced him to the news media. Television and newspaper reporters then asked defendant questions about his involvement in the Family Video Store robbery and shooting. In his responses to the reporters' questions, defendant made incriminating statements.

{¶ 106} Defendant argues that because he was in police custody during this media interview and because police clearly facilitated the interview and knew or should have known that the media representatives would ask incriminating questions, this interview was the functional equivalent of custodial interrogation by police. Defendant was therefore entitled to *Miranda* warnings before the interview, he argues. Because no warnings were given, defendant argues, his trial counsel performed in a deficient manner by failing to raise and argue this violation of defendant's *Miranda* rights in the motion to suppress. We disagree.

{¶ 107} The concern that produced the procedural safeguards outlined in *Miranda* is the inherent coerciveness and compulsion that pervades police-dominated custodial interrogation and the potential that has to overcome the free will of the suspect and undermine the Fifth Amendment privilege against compulsory self-incrimination. The *Miranda* warnings serve to dispel those coercive effects. The *Miranda* warnings are therefore required whenever a person in police custody is subjected to interrogation, that is, either express questioning initiated by law-enforcement officers or its functional equivalent, any words or actions on the part of the police that they know or should know are reasonably likely to elicit an incriminating response from the suspect. Id., 384 U.S. at 444, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Rhode Island v. Innis* (1980), 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297.

{¶ 108} *Miranda* warnings are not required when a suspect is interrogated by a private citizen or a person whom the suspect does not know as a law-enforcement officer. In that circumstance, the coercive effects of police-dominated custodial interrogation at which *Miranda* is directed and which its warnings are intended to dispel are substantially diminished or wholly lacking. *Illinois v. Perkins* (1990), 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243.

{¶ 109} The administrator of the jail, David Rapp, testified at the suppression hearing that the police did not ask or encourage the news media to interview defendant. Rather, it was representatives of the news media who initiated contact with the jail and asked to interview defendant. That request was merely

relayed by deputies to defendant, who was free to agree to or decline the interview. The members of the news media who participated in the interview testified that no law-enforcement officers asked them to interview defendant and that they were not acting as agents or on behalf of the police in doing so.

{¶ 110} All of the questions asked of defendant during the media interview were asked by members of the press. No police officers participated in the questioning. The fact that police set up their own video camera to record anything defendant might say during the media interview, while clearly opportunistic, does not make them an active participant in the questioning by the news media. Therefore, it is not "interrogation" as that term is defined for *Miranda* purposes.

{¶ 111} It is clear from this record that defendant voluntarily consented to be interviewed by the news media and that there was no involvement by law-enforcement officers or other state actors in the questioning or interrogation of defendant by the news media. All questioning was done by private citizens, members of the news media who defendant had no reason to believe were law enforcement officers. Therefore, *Miranda* warnings were not required prior to this media interview. Because there was no violation of defendant's *Miranda* rights with respect to the media interview, there is no deficient performance by defendant's trial counsel in failing to raise and argue that issue.

{¶ 112} The fifth assignment of error is overruled.

## SIXTH ASSIGNMENT OF ERROR

{¶ 113} "The trial court erred when it sentenced Mr. Kerby to consecutive prison terms without stating the reasons in support of its findings that warranted consecutive sentences."

{¶ 114} Defendant was convicted of five separate offenses. The trial court imposed concurrent sentences on the first four but ordered that the six-year sentence for the fifth offense, felonious assault, be served consecutively to the others. Defendant concedes in his brief that the trial court made the necessary findings on the record at the sentencing hearing required by R.C. 2929.14(E)(4) in order to impose consecutive sentences. Defendant's complaint is that the court did not give reasons supporting those findings and the consecutive sentence it imposed as required by R.C. 2929.19(B)(2)(c). This record affirmatively demonstrates otherwise.

{¶ 115} Our review of the sentencing hearing reveals that the trial court made the findings required by R.C. 2929.14(E)(4) to impose consecutive sentences. The court found that consecutive sentences were necessary to punish defendant and protect the public and were not disproportionate to defendant's

374

conduct and the danger that he posed. The court additionally made two of the three alternative findings in R.C. 2929.14(E)(4): that the harm caused by defendant's conduct was so great or unusual that a single term would not adequately reflect the seriousness of defendant's conduct, R.C. 2929.14(E)(4)(b), and that defendant's criminal history showed that consecutive sentences were needed to protect the public, R.C. 2929.14(E)(4)(c).

{¶ 116} The court also set forth on the record at the sentencing hearing its reasons in support of the findings and consecutive sentence it imposed. R.C. 2929.19(B)(2)(c). Based upon the fact that one store employee was killed and another suffered serious physical injuries, the court found that both victims suffered serious physical harm. R.C. 2929.12(B)(2). The court also found that both victims' families suffered economic harm. Id. The court additionally found that defendant had a lengthy record of juvenile adjudications and that defendant showed no genuine remorse for the offense. R.C. 2929.12(D)(2) and (5).

{¶ 117} The trial court's reasons for imposing consecutive sentences are expressed in its analysis of the seriousness and recidivism factors in R.C. 2929.12 and its findings in that regard. The serious physical harm suffered by both victims and the economic harm suffered by the victims' families make this offense one that is more serious. Defendant's lengthy record of prior juvenile adjudications and his lack of remorse make recidivism more likely. These reasons adequately support and explain the specific findings in R.C. 2929.14(E)(4) that the court made in order to impose consecutive sentences. The court complied with R.C. 2929.19(B)(2)(c), and thus we cannot clearly and convincingly find that defendant's sentence is contrary to law. R.C. 2953.08(G)(2).

{¶ 118} In a motion for leave to amend this assignment of error, defendant additionally argues that because the findings the trial court made pursuant to R.C. 2929.14(E)(4) to support consecutive sentences were neither admitted by him nor found by a jury, the consecutive sentences violate his Sixth Amendment right to a jury trial and the rule of *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.

{¶ 119} Defendant did not raise this issue at any time in the trial court below. As a result, any error in that regard has been waived and the issue was not preserved for appellate review. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364; *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277; *State v. Barnette* (Dec. 28, 2004), Mahoning App. No. 02CA65, 2004-Ohio-7211, 2004 WL 3090228.

{¶ 120} Constitutional rights, like any other rights, may be lost by a failure to assert them at the proper time. *Awan*, 22 Ohio St.3d 120, 22 OBR 199,

489 N.E.2d 277. We will not address this constitutional challenge to Ohio's felony-sentencing scheme that is being raised for the first time on appeal.

{¶ 121} The sixth assignment of error is overruled.

{¶ 122} Having sustained defendant's second assignment of error, we vacate his conviction and remand this matter to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BROGAN, P.J., and WOLFF, J., concur.