[Cite as *State v. Coleman*, 2018-Ohio-4043.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 27987 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-2875 |
| | : | |
| BENNIE COLEMAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 5th day of October, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellant

CHARLES W. SLICER, III, Atty. Reg. No. 0059927, 426 Patterson Road, Dayton, Ohio 45419
     Attorney for Defendant-Appellee

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Plaintiff-appellant State of Ohio appeals from the order of the Montgomery County Court of Common Pleas which sustained, in part, the motion to suppress filed by defendant-appellee Bennie Coleman. The State contends that the trial court erred by finding Coleman, after waiving his right to silence, subsequently made an unambiguous assertion of his right to remain silent. The State alternatively argues that, even if Coleman properly invoked the right, he voluntarily re-initiated the custodial interrogation.

{¶ 2} We conclude that the record supports the trial court's finding that Coleman's invocation of his right to remain silent was not ambiguous. We further conclude that the record supports the finding that Coleman's invocation of the right to remain silent was not honored. We finally conclude that, since Coleman's invocation of his right to silence was not honored, Coleman's comment that could be construed as a willingness to continue the discussion is not relevant to our analysis. Thus, the trial court correctly decided the suppression issue.

{¶ 3} Accordingly, the judgment of the trial court is affirmed.

## I. Facts and Procedural History

{¶ 4} This case arises from the July 2016 shooting death of Terry Joiner. During the ensuing police investigation, Coleman was identified as a suspect. Dayton Police Department Detectives David House and Tom Cope made contact with Coleman in the parking lot of an apartment complex in Dayton. The detectives called for a cruiser to transport Coleman to the Safety Building in order to conduct an interview.

{¶ 5} The interview, which was recorded on a DVD, began at 1:14 p.m., and

continued until a break was taken at 2:12 p.m.  The interview resumed at 2:18 p.m., at which time the detectives brought Coleman a drink.  At approximately 2:37 p.m., the following colloquy occurred:

House:      Then why did you kill him?

Coleman:    I didn't f****** kill him.  Goddamn.  Are we going to do this all night?  I don't know what we're going to do, I really don't.

House:      You can end it right now just by telling the truth because right now you're just spewing lies, man.  It's stupid, man.  You just sit here and continue to lie about it.  It happened.  People saw you.

Coleman:    Well, I plead the Fifth.

House:      Ok, well that's for a courtroom, all right?

Coleman:    I've got nothing to say.

House:      So are you telling us that you don't want to talk to us no more?  Yes?  No?

Coleman:    [Ten second pause during which Coleman nods head affirmatively.]

House:      Just waiting for a response.  I don't want a head nod to be mistaken as a yes or no.  Give me a verbal response.  You don't want to talk to us no more, we're done.

Coleman:    [Shakes head negatively.]

House:      See now you are shaking your head no.  So what does that mean?  You do or you don't?

Coleman: I don't.

House: All right. So we're done?

Coleman: Are we? Can you let me go now?

House: I didn't say I was letting you go. I just said are we done. Trying to get you to tell the truth. You don't want to tell the truth. You are just digging your own grave.

Coleman: What is it gonna take for you to let me go?

House: I did not say you was leaving anywhere.

Coleman: You did not say I was staying either.

House: Well, I've made up my mind now. You gave me a lot of information; put yourself at the crime scene. Put yourself with the gun. You lied about everything before and after, so yeah. So, we're done, right? Close up shop.

Coleman: So, hold that thought for one time.

House: You want to be done, we'll be done. It's up to you. I have no problem with it. You want to be done, we'll be done. I mean all we've asked for is the truth man. All we've asked for is the truth.

**{¶ 6}** At that point, Coleman and House resumed the interview. At 2:43 p.m., the Detectives placed Coleman in another room while they left the premises in order to search for a gun that was discussed during the interview. The interview resumed at 3:33 p.m. Coleman was provided with snacks and another drink. The interview concluded at 4:07 p.m.

{¶ 7} On November 7, 2017, Coleman was indicted on one count of having a weapon under disability and one count of tampering with evidence. Coleman filed a motion to suppress the entirety of the interview. A hearing was conducted, following which the trial court denied the motion to suppress regarding the statements made prior to Coleman's assertion of his Fifth Amendment rights, but it sustained the motion to suppress the statements made after Coleman's invocation of his right to silence.

{¶ 8} The State appeals.

## II. Analysis

{¶ 9} The State's sole assignment of error states as follows:

BECAUSE COLEMAN REINITIATED THE INTERVIEW AFTER TELLING THE DETECTIVES THAT HE NO LONGER WISHED TO ANSWER QUESTIONS, COLEMAN'S RIGHT TO REMAIN SILENT WAS NOT VIOLATED. THE TRIAL COURT ERRED, THEREFORE, IN SUPPRESSING COLEMAN'S STATEMENTS.

{¶ 10} The State contends that the trial court erred by suppressing Coleman's statements made after his assertion that he was pleading "the Fifth." The State argues that Coleman's assertion was too ambiguous to inform House that he was invoking his right to remain silent. The State further argues that, even if Coleman did adequately invoke his right to remain silent, he waived it by re-initiating the interview.

{¶ 11} When deciding a motion to suppress, "the trial court assumes the role of trier of facts and is, thus, in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d

Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). In reviewing the trial court's decision, "the court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). "Accepting those facts as true, the appellate court must then independently determine as a matter of law and without deference to the trial court's legal *conclusion*, whether the applicable legal standard is satisfied." *Id.*

{¶ 12} The Fifth Amendment to the United States Constitution protects individuals from self-incrimination during custodial interrogations. *Miranda v. Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In order to enforce this right, *Miranda* requires that a person subject to custodial interrogation be advised in clear and unequivocal language of certain rights including his right to remain silent. *Id.* at 473-474. The ability to exercise these rights exists throughout the duration of the interview. *Id.* at 479.

{¶ 13} Once a defendant properly waives his right to remain silent, any subsequent assertion of that right must be unambiguous to require termination of the interrogation. *Berghuis v. Thompkins*, 560 U.S. 370, 381, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010). But, when such an unambiguous assertion of the right is made, the interrogation must cease. *See Miranda* at 473-74 ("Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.")

{¶ 14} In *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 46 L .Ed.2d 313

(1975), the Supreme Court discussed the admissibility of custodial statements made after a defendant's invocation of the right to silence, stating that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.' " *Id.* at 102-103. Thus, even if a suspect has invoked his right to remain silent, any information he then volunteers is admissible, provided it did not result from further interrogation. *Miranda* at 478. ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.") In other words, "[t]he invocation does not bar further questioning altogether, but [rather mandates that] police must scrupulously honor the defendant's exercise of his right to cut off questioning." *State v. Murphy*, 91 Ohio St.3d 516, 519, 747 N.E.2d 765 (2001), citing *Mosley* at 104, citing *Miranda* at 479.

{¶ 15} *Mosley* indicates that the determination of whether a defendant's right to cut off questioning was scrupulously honored requires a case-by-case analysis. *Jackson v. Dugger*, 837 F.2d 1469, 1472 (11th Cir.1988), citing *United States v. Hernandez*, 577 F.2d 1362, 1368 (5th Cir.1978); *Wilcher v. Haggett*, 978 F.2d 872, 877 (5th Cir.1992); *United States v. Hsu*, 852 F.2d 407, 409 (9th Cir.1988). *Mosley* included a consideration of the amount of time that lapsed between interrogations; the scope of the second interrogation; whether new *Miranda* warnings were given; and the degree to which police officers pursued further interrogation once the suspect had invoked his right to silence. *Mosley* at 104-106. "Beyond assessing these factors, however, our ultimate review must account for the 'totality of the circumstances,' with an eye to determining whether the suspect retained the ability to choose whether and when to speak." *United States v. Oquendo-Rivas*, 750 F.3d 12, 18 (1st Cir.2014) citing *United States v. Lugo Guerrero*,

524 F.3d 5, 12 (1st Cir.2014) quoting *United States v. Thongsophaporn*, 503 F.3d 51, 57 (1st Cir.2007).

**{¶ 16}** The United States Supreme Court has defined "interrogation" as "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The functional equivalent of interrogation consists of any "words or actions on the part of the police * * * that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* The Supreme Court has further observed that "we must remember the purpose behind our decisions in *Miranda* and *Edwards* [*v. Arizona*, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981)]: preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment." *Arizona v. Mauro*, 481 U.S. 520, 529-30, 107 S.Ct. 1931, 95 L.Ed.2d 458 (1987). In *Mauro*, the defendant was permitted to visit with his wife, also a suspect in the underlying crime, while an officer was present. Incriminating statements were made during the visit. However, the Court concluded that the government had not interrogated the defendant because "Mauro was not subjected to compelling influences, psychological ploys, or direct questioning." *Id.* at 529. Additionally, interrogation has been found not to include purely conversational interactions or standard booking questions. *See United States v. Sanchez*, 817 F.3d 38, 46 (1st Cir.2016); *Saranchak v. Beard*, 616 F.3d 292, 303-304 (3rd Cir.2010).

**{¶ 17}** In this case, the State first claims that Coleman's statement that he wanted to plead the Fifth was ambiguous, and thus, did not require House to terminate the interrogation. We disagree. In *Anderson v. Terhune*, 516 F.3d 781 (9th Cir.2008), the

federal court of appeals noted that "we rarely have occasion to address a situation in which the defendant not only uses the facially unambiguous words "I plead the Fifth," but surrounds that invocation with a clear desire not to talk anymore." *Id.* at 787. The court further stated that "it doesn't take a trained linguist, a Ph.D., or a lawyer to know" what a criminal defendant means when making such a statement. *Id.* at 783. In this case, the State has not pointed to anything inherently equivocal or ambiguous in Coleman's invocation. Even if we were to agree that the statement, "I plead the Fifth," was ambiguous, Coleman's subsequent shaking and nodding of his head indicating, in response to House's questions, that he did not want to talk, along with his final response of "I don't," made it clear that he was invoking the right. Thus, we agree with the trial court that Coleman made an unambiguous, unequivocal invocation of his right to silence.

{¶ 18} The State next claims that even if Coleman invoked his right to silence, his subsequent decision to re-initiate the interview compelled a finding that Coleman had "an independent willingness and * * * desire to continue the interview." Again, we disagree.

{¶ 19} Despite the fact that Coleman invoked his right to silence at least three times, the interaction with House continued. House, during this continued interrogation, asserted that Coleman's decision to "plead the Fifth" was for a courtroom.[1] House then indicated that Coleman should tell the truth and that by failing to do so, he was "digging [his] own grave". This cannot be considered as a scrupulous honoring of Coleman's invocation of his right to remain silent. *See United States v. Tyler*, 164 F.3d 150, 155 (3rd Cir.1998) ("[T]he command to 'tell the truth' after [the defendant] had invoked his

---

[1] At the suppression hearing, House acknowledged that he was aware this statement was incorrect. However, House made no attempt to correct himself, and Coleman was left with the statement that he could not "plead the Fifth" at the time of the interview.

*Miranda* rights is the antithesis of scrupulously honoring his right to remain silent."); *State v. Kerby*, 162 Ohio App.3d 353, 2005-Ohio-3734, 833 N.E.2d 757, ¶ 87 (2d Dist.) ("In our view, [scrupulously honor] means that police ought not resume the interrogation, either directly or indirectly, by encouraging the suspect to tell his side of the story in order to help himself, which is the functional equivalent of interrogation.")

{¶ 20} The facts here are similar to those in *Kerby*, wherein we noted that "the statements [the Detective] admittedly made could have no purpose other than trying to persuade defendant to resume the interrogation he had earlier cut off, [and thus,] they were the functional equivalent of further interrogation on the same matter." *Id.* at ¶ 91. Thus, as in *Kerby*, any alleged waiver by Coleman was procured by House's statements.

{¶ 21} Further, this situation, contrary to the State's suggestion, is not controlled by *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). Bradshaw, during a custodial interrogation conducted after he had waived his *Miranda* rights, asserted his right to counsel, prompting the interrogating officer to immediately terminate the questioning. A few minutes later as he was being escorted from the police station, Bradshaw asked the officer, "[W]ell, what is going to happen to me now?" *Id.* at 1045. The officer informed Bradshaw that he did not have to speak to the officer, and Bradshaw indicated that he understood this. Thereafter, Bradshaw and the officer engaged in a discussion involving the investigation, which culminated in Bradshaw making incriminating statements. The Supreme Court ruled that when a suspect's interrogation is terminated upon the assertion of the right to counsel, the analysis of whether subsequent statements are subject to suppression begins with a determination of whether the suspect, through his initiative, indicates a willingness to further discuss the

investigation. The Supreme Court decided that Bradshaw's question demonstrated such a willingness. The second step is an analysis, based upon the totality of the circumstances, of whether the suspect knowingly, intelligently, and voluntarily waived the right to counsel and the right to silence. In this case, Coleman's interrogation did not stop following his unambiguous assertion of the right to remain silent. Thus, *Oregon v. Bradshaw* is not relevant to the suppression determination.

{¶ 22} We conclude that the trial court did not err in suppressing Coleman's statements made after his invocation of his right to silence. Coleman's assertion of his right to silence should have brought an immediate end to questioning. Instead of scrupulously honoring the request, House asked unnecessary "clarifying" questions and even misled Coleman with the statement that his right to plead the Fifth was for the courtroom. House further admonished Coleman for failing to tell the truth and implied that Coleman would suffer consequences by cutting off the interrogation. Any statements made by Coleman after the failure to honor his right to silence were made in response to the functional equivalent of interrogation and a misstatement concerning how the right to remain silent may be invoked. Based upon this specific set of facts, we conclude that the trial court's suppression of the statements made after Coleman asserted his right to remain silent was supported by the record.

{¶ 23} Accordingly, the State's sole assignment of error is overruled.

### III. Conclusion

{¶ 24} The State's sole assignment of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Charles W. Slicer, III
Hon. Steven K. Dankof