NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 11a0390n.06

No. 08-5717

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Jun 07, 2011

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| STEPHEN GREGORY MALCOLM, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: KENNEDY, BOGGS, and SUTTON, Circuit Judges.

**CORNELIA G. KENNEDY, Circuit Judge.** Stephen Gregory Malcolm pleaded guilty to maliciously starting a fire at the St. Clair Mall in Frankfort, Kentucky. He appeals the district court's order denying his motion to suppress statements made during an interview with law enforcement personnel. He claims that the interview was conducted after he was placed in custody without being properly informed of his constitutional rights, that his request for counsel was ignored, and that the interview continued after he was informed of his *Miranda* rights, but after he requested counsel. For the reasons that follow, we **AFFIRM**.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 4, 2007, a fire occurred at the St. Clair Mall on St. Clair Street in Frankfort, Kentucky. A few days later, Malcolm was interviewed by Special Agent Gary Smith of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") concerning his whereabouts at the time of the fire. At some time thereafter, the investigation of the fire was assigned to ATF Special Agent Robert Young. On April 3, 2007, Special Agent Young contacted Malcolm to inquire as to whether

Malcolm would agree to a second interview. In making this request, Special Agent Young represented to Malcolm that the purposes of the second interview were to get Young "up to speed" on the case and to verify certain alibi facts that Malcolm had provided to Special Agent Smith during the initial interview. These proffered reasons were not entirely truthful; Special Agent Young already suspected that Malcolm had started the fire.

Malcolm consented to a second interview, which was scheduled for April 4, 2007 at the ATF office in Lexington, Kentucky. Some time prior to the scheduled interview, Malcolm advised Special Agent Young via text message that he was having trouble getting away from work to come to the ATF office for the interview. Upon receipt of the text message, Special Agent Young telephoned Malcolm and Malcolm asked if the interview could be conducted at his place of employment, a car dealership, instead of at the ATF office. In response, Special Agent Young explained to Malcolm that conducting the interview at the car dealership would not be ideal because there would likely be too many distractions and interruptions during the interview and Malcolm's employer would probably not want ATF agents on the premises, perceiving their presence to be an interruption to the business's operations. As a result, later that day Malcolm drove to the ATF office in Lexington, Kentucky for his second interview.

This second interview, which was videotaped, occurred in a windowless room at the ATF office, with Malcolm, Special Agent Young, and Frankfort Police Detective Alan Burton seated at a table that was pushed up against a wall. The table was situated such that three people could sit around it. Malcolm sat facing the wall with Special Agent Young to his right and Detective Burton to his left. There were two doorways providing ingress and egress to the interview room. At the beginning of the interview, Special Agent Young advised Malcolm that he was not under arrest and

could terminate the interview at any time, and pointed out to Malcolm that one of the doors to the interview room was unlocked so that he could exit the interview room at any time. Malcolm was not restrained in any way.

During approximately the first hour of the interview, before Malcolm made any incriminating statements, the interviewers advised him on five separate occasions that he was not under arrest and that he was free to terminate the interview and leave. At one point Malcolm stated "I think before I say anything, I probably should have an attorney. I mean realistically – " Special Agent Young interjected: "That's your call." Malcolm continued, "I mean – I don't know." Special Agent Young and Detective Burton continued their questioning of Malcolm. After Malcolm made incriminating statements, he was read his *Miranda* rights, but he did not terminate the interview and continued making statements to the interviewers.

Malcolm was arrested and charged with two counts of criminal conduct relating to the fire. The first count charged Malcolm with maliciously damaging and destroying and attempting to damage and destroy by fire certain buildings and businesses and other real and personal property in violation of 18 U.S.C. § 844(i). The second count charged Malcolm with making a materially false statement to Special Agent Smith in violation of 18 U.S.C. § 1001(a)(2) regarding where he was on the day of the fire.

Malcolm moved to suppress statements from the April 4, 2007 interview, arguing that the interview was a custodial interrogation and, thus, before the interview, the investigators were required to advise him of his constitutional rights, including the right against self-incrimination and the right to counsel, as required by *Miranda v. Arizona*, 384 U.S. 436 (1966). Malcolm also argued that the investigators improperly continued the interview after he said that he wanted to speak to an

attorney. Finally, Malcolm argued that, after the investigators formally arrested him and advised him of his constitutional rights as required under *Miranda*, they improperly continued to question him because he had already requested counsel.

A suppression hearing was held before Magistrate Judge James B. Todd which included testimony by Special Agent Young. Following briefing by the parties, the magistrate judge issued a report and recommendation to Judge Karen K. Caldwell of the Eastern District of Kentucky. Magistrate Judge Todd determined that Malcolm was not in custody during the approximate first hour of the interview, ending when he was formally arrested and provided his *Miranda* rights. Thus, the magistrate judge concluded, Malcolm did not have a right to counsel for the first portion of the interview and the investigators were not required to inform him of his *Miranda* rights. In addition, the magistrate judge determined that Malcolm did not make an unambiguous request for counsel as required under *Davis v. United States*, 512 U.S. 452, 458-59 (1994). Finally, the magistrate judge decided that, after Malcolm was placed under arrest and informed of his *Miranda* rights, Malcolm impliedly waived those rights when he acknowledged that he understood his rights and continued with the interview. Malcolm filed timely objections to the magistrate judge's report, which the district court adopted with slight factual modifications.

Thereafter, Malcolm conditionally pleaded guilty and timely appealed.

## STANDARD OF REVIEW

When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

4

conviction that a mistake has been committed." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). "Where a district court denies [a motion to suppress], we consider the evidence 'in the light most favorable to the government.'" *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc) (quoting *United States v. Wellman*, 185 F.3d 651, 654-55 (6th Cir. 1999)). Moreover, "we must give deference to the district court's assessment of credibility inasmuch as the court was in the best position to make such a determination." *United States v. Hill*, 195 F.3d 258, 264-65 (6th Cir. 1999).

## ANALYSIS

Malcolm appeals the district court's denial of his motion to suppress on the same three grounds he argued in favor of suppression below: that the entire interview was a custodial interrogation prior to which the investigators were required to advise him of his constitutional rights; that the investigators improperly continued the interview after he said he wanted to speak to an attorney; and that after the investigators formally arrested him and advised him of his constitutional rights as required under *Miranda*, they improperly continued to question him even though he had already said he wanted to speak to an attorney. These challenges are all analytically linked, e.g., if Malcolm was not in custody, the ambiguity of his request for counsel was irrelevant because someone not in custody has no constitutional right to counsel. *See Edwards v. Arizona*, 451 U.S. 477, 484 (1981) ("[W]hen an accused has invoked his right to have counsel present *during custodial interrogation*, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." (emphasis added)). Similarly, if Malcolm's request for counsel was ambiguous, the agents were not required to cease questioning him after he was advised of his *Miranda* rights. *Davis*, 512 U.S. at

5

458-59. Because these arguments are related, we must determine first, whether the first hour of the second interview was a custodial interrogation and second, whether Malcolm requested counsel in a way to trigger his Fifth Amendment rights. We conclude that the first hour of the second interview was not a custodial interrogation and that Malcolm never unambiguously requested counsel.

I. Malcolm's Initial Interrogation

The Fifth Amendment states that a defendant cannot be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda*, the Supreme Court determined that a suspect under custodial interrogation must be given notice of his Fifth Amendment right against self-incrimination. 384 U.S. at 478-79. To ensure compliance with this rule, incriminating statements elicited during custodial interrogation prior to *Miranda* warnings cannot be admitted at trial. *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam). However, this rule only applies "where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam). The Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. "[T]he proper inquiry . . . [involves] two essential questions: '[F]irst, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.'" *Coomer v. Yukins*, 533 F.3d 477, 485 (6th Cir. 2008) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

"The question of whether a defendant was 'in custody' is a mixed question of fact and law, and is thus reviewed *de novo*." *United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003). In

6

determining whether a suspect is subjected to a custodial interrogation, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). The "ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting *Mathiason*, 429 U.S. at 495).

This Court has previously outlined several factors to consider to determine whether someone is in custody. The first factor considered is whether a reasonable person in defendant's situation "would have believed that [he] was free to terminate the interrogation and leave." *United States v. Crossley*, 224 F.3d 847, 861 (6th Cir. 2000). Additionally, we have considered "(1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions." *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010).

Applying these factors, we conclude that the magistrate judge and district court were correct; the initial portion of the April 4, 2007 interview was not a custodial interrogation. During the interview, Malcolm was not handcuffed or physically restrained, facts which weigh against a custodial interrogation.[1] *See United States v. Panak*, 552 F.3d 462, 467 (6th Cir. 2009). Malcolm

---

[1]We are unpersuaded that general security protocols within the ATF office, which required staff escort for non-ATF visitors, restricted Malcolm's movements in any noteworthy fashion. Similarly, the fact that Malcolm was told that he could not smoke in the interview room did not render the interview custodial, even though the second time that Malcolm asked "can I go smoke" he was told "give us five minutes here, tell us what happened, and then we'll go smoke." Given the commonality of these restrictions on activity and movement within modern office buildings, they would not make a reasonable person feel as though he or she could not leave and terminate an interview.

was told repeatedly that he could leave and was not under arrest.[2]  *See Coomer*, 533 F.3d at 487

(stating that under *United States v. Salvo*, 133 F.3d 943, 951 (6th Cir. 1998), "one of the most

important factors in the custody inquiry is whether an officer explicitly informs a suspect that he or

she is not under arrest").  Additionally, Malcolm voluntarily appeared for the interview.  *See*

*Mathiason*, 429 U.S. at 495 (noting that the defendant voluntarily came to the police station for

questioning).  Though Malcolm's interview did occur at the ATF office at Special Agent Young's

request, a non-custodial interview is not transformed into a custodial one simply because "the

questioning takes place in the station house, or because the questioned person is one whom the police

suspect."  *Id*.  Moreover, the fact that Special Agent Young lied to Malcolm regarding the purpose

of the interview does not create the level of compulsion or coercion that turns non-custody into a

custodial situation.  *See Berkemer*, 468 U.S. at 442 (holding that an agent's "unarticulated plan has

no bearing on the question whether a suspect was 'in custody' at a particular time").

 For these reasons, the first hour of the April 4, 2007 interview was a non-custodial interview.

Because the Fifth Amendment rights against self-incrimination do not attach to non-custodial

interviews, *see United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009) ("The application of the

Miranda rule is limited to 'custodial interrogations.'"), Malcolm did not need to be informed of his

*Miranda* rights before the interview began.  The incriminating statements Malcolm made before

being placed under arrest were admissible.

---

[2]Malcolm's argument that the questioning continued late into the day, making him concerned
about returning a borrowed car has no bearing on this inquiry.  Malcolm was formally arrested and
provided with his *Miranda* rights approximately one hour into the interview, long before he could
have difficulty returning a borrowed car.

II.  Malcolm's Mention of Counsel

Once a suspect invokes his right to counsel, he may not be "subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484-85. A request for the assistance of counsel must be "unambiguous or unequivocal." *Davis*, 512 U.S. at 459-62.  The key inquiry is to look at whether "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*. at 459.

In the previous section, we concluded that Malcolm was not in custody at the time that he mentioned the possibility of speaking with an attorney and was therefore not entitled to counsel under *Miranda. See Mathiason*, 429 U.S. at 494-95 (holding that a burglary suspect who voluntarily replied to a police request for an interview was not entitled to *Miranda* warnings in a noncustodial situation).  Additionally, his statement was ambiguous and equivocal, and therefore failed to meet the requirements established by the Supreme Court to mandate an end of questioning. *See Davis*, 512 U.S. at 462 (affirming the lower courts' holdings that a suspect's remark during custodial interrogation that "Maybe I should talk to a lawyer" was not a request for counsel).  Consequently, the agents did not err in failing to halt the interview when Malcolm mentioned the possibility of acquiring representation.  Likewise, the agents were not required to cease their questioning of Malcolm after they placed him in custody on the basis of his prior ambiguous request for counsel—Malcolm never requested counsel after being placed in custody.

**CONCLUSION**

For these reasons, we **AFFIRM**.