RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0166p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JAMES MCKINNEY,

*Petitioner-Appellee,*

*v.*

No. 15-1374

BONITA J. HOFFNER, Warden,

*Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:13-cv-15284—Marianne O. Battani, District Judge.

Argued: December 10, 2015

Decided and Filed: July 19, 2016

Before: BATCHELDER, McKEAGUE, and STRANCH, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Jerrold E. Schrotenboer, JACKSON COUNTY PROSECUTOR'S OFFICE, Jackson, Michigan, for Appellant. Brett DeGroff, STATE APPELLATE DEFENDER OFFICE, Lansing, Michigan, for Appellee. **ON BRIEF:** Jerrold E. Schrotenboer, JACKSON COUNTY PROSECUTOR'S OFFICE, Jackson, Michigan, for Appellant. Brett DeGroff, Valerie R. Newman, STATE APPELLATE DEFENDER OFFICE, Lansing, Michigan, for Appellee.

McKEAGUE, J., delivered the opinion of the court in which BATCHELDER, J., joined. STRANCH, J. (pp. 15–16), delivered a separate dissenting opinion.

1

---

**OPINION**

---

McKEAGUE, Circuit Judge.   James McKinney shot and killed his partially paralyzed roommate, James Harper.  McKinney then fled in Harper's van, carrying Harper's wallet and in possession of the gun he used to kill Harper.  After McKinney was arrested, he confessed to murdering Harper.  McKinney successfully moved to suppress the confession before trial, but on an interlocutory appeal the Michigan Supreme Court reversed, holding that McKinney did not unequivocally request counsel.  McKinney was convicted of first degree murder after his videotaped confession was admitted and played at trial.  McKinney now seeks habeas corpus relief in federal court, arguing that the Michigan Supreme Court erred because McKinney unequivocally requested counsel and the police continued to interrogate him.  The district court agreed and conditionally granted McKinney's habeas petition pending a new trial, but the district court failed to show the requisite deference afforded to state court decisions on habeas review. Because the Michigan Supreme Court's decision was not an unreasonable application of clearly established federal law, we reverse the grant of habeas relief.

**I**

*Factual Background.*  In 2007, James Harper, who was around 70 years old at the time, allowed James McKinney to move into his home in exchange for doing various chores around the house.  Harper's caretaker, Marcia Wilkinson, also lived there.  According to Wilkinson, McKinney and Harper would sometimes argue, and at one point McKinney voiced a desire to move out.  On October 22, 2009, Wilkinson went to stay with her mother, leaving Harper and McKinney by themselves.  After Wilkinson left, McKinney shot Harper in the face at point-blank range while Harper slept, killing him.  McKinney fled in Harper's van, and police soon arrested him in Illinois following a traffic stop during which McKinney claimed to be Harper. The officers searched the van and discovered two handguns—including the one used to kill Harper—a handgun magazine, and Harper's wallet.

Detectives from the Hillsdale County Sheriff's Department came to Illinois to investigate Harper's death. On October 29, 2009, Detective Mark Hodshire interviewed McKinney prior to extradition to Michigan. Hodshire advised McKinney of his *Miranda* rights and began questioning him. Soon after, the following exchange occurred:

| | |
|---|---|
| Detective Hodshire: | So, you know why I'm here to talk to you, right? |
| James McKinney: | Yeah, yeah. |
| Hodshire: | So, I'm here to get your side of the story of what happened and why. Okay. When we do investigations, we understand that things happen for certain reasons and some of those reasons we don't understand . . . so that's why I wanted to talk with you today to get your side of the story of what happened. |
| McKinney: | Well if you don't mind, I just assume wait until I get a public defender or whatever.[1] |
| Hodshire: | Well that's fine, but like I said . . . . |
| McKinney: | We can talk over all the other circumstances. |

R. 1-3, McKinney Interview Tr. at 6–7, Page ID 58–59. McKinney went on to confess to Harper's murder. He was then extradited and ultimately convicted in the Hillsdale County Circuit Court.

*Procedural Background.* McKinney was charged with three offenses: first-degree premeditated murder, unlawfully driving away an automobile, and possession of a firearm during the commission of a felony. The trial court granted McKinney's pre-trial motion to suppress his confession. The State filed an interlocutory appeal, and the Michigan Court of Appeals affirmed the trial court's decision. *People v. McKinney*, No. 296455, 2010 WL 4226761, at *2–3 (Mich. Ct. App. Oct. 26, 2010). But the Michigan Supreme Court issued a one-paragraph reversal in a 6-1 decision, concluding that McKinney's two statements were not an unequivocal request for an attorney. *People v. McKinney*, 794 N.W.2d 614, 614–15 (Mich. 2011).

The prosecution relied heavily on McKinney's confession at trial, playing it almost in full and mentioning it often in opening and closing arguments. The jury found McKinney guilty of

---

[1]We read this as "Well if you don't mind, I'd just as soon wait until I get a public defender or whatever." *See* R. 1-2, Motion to Suppress Tr. at 10, Page ID 50.

all three charges, and the state trial court sentenced him to life in prison for the murder conviction and lesser terms for the other crimes. McKinney appealed on the ground that his confession was inadmissible, but the Michigan Court of Appeals affirmed the judgment because the Michigan Supreme Court had settled the issue in its earlier order. *People v. McKinney*, No. 305093, 2012 WL 4039706, at *1 (Mich. Ct. App. Sept. 13, 2012). The Michigan Supreme Court denied McKinney's request for leave to appeal. *People v. McKinney*, 826 N.W.2d 729 (2013).

McKinney then filed a habeas petition in district court. He contended that the Michigan Supreme Court unreasonably applied clearly established federal law in ruling that he failed to unequivocally invoke his right to counsel. He also asserted that this error had a substantial effect in determining the jury's verdict. The district court agreed and granted a conditional writ of habeas corpus under 28 U.S.C. § 2254, ordering that the writ be granted unless the state retries McKinney within 90 days without the use of his confession. *McKinney v. Hoffner*, No. 2:13-CV-15284, 2015 WL 1218527 (E.D. Mich. Mar. 17, 2015). Respondent (the State) appeals that decision.

## II

We review the district court's decision to grant a petition for a writ of habeas corpus *de novo*. *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000). Habeas review of state court decisions is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d). As an initial matter, we must determine whether AEDPA even applies here.

The Michigan Supreme Court held, in a one-paragraph opinion, that McKinney's two statements were not an unequivocal request for counsel:

> The defendant's statement that he would "just as soon wait" until he had an attorney before talking to the police [Statement 1], followed immediately by his statement that he was willing to discuss the "circumstances" [Statement 2], was not an unequivocal assertion of the right to counsel or a statement declaring an intention to remain silent.

*People v. McKinney*, 794 N.W.2d at 614–15 (internal citation omitted). However, the crux of this case is whether Detective Hodshire's comment "Well that's fine, but like I said" was

interrogation. If Hodshire's statement was interrogation, then the Michigan Supreme Court improperly used McKinney's second statement in determining that he did not unequivocally request counsel. *See Smith v. Illinois*, 469 U.S. 91, 100 (1984) (holding that, after a suspect unambiguously requests counsel, the suspect's "responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request"). The Michigan Supreme Court's decision did not explicitly address whether Hodshire's comment was interrogation. However, the State asserts that the Michigan Supreme Court must have concluded it was not, because only then could the court have used Statement 1 and Statement 2 together to decide that McKinney did not unequivocally request counsel. We agree.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). Thus, AEDPA "does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits." *Johnson*, 133 S. Ct. at 1094 (internal citation and quotation marks omitted). The presumption also applies "when a state-court opinion addresses *some but not all* of a defendant's claims." *Id.* (emphasis added). "This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Harrington*, 562 U.S. at 98.

Applying this legal presumption, we hold that the Michigan Supreme Court determined that Hodshire's statement was not interrogation. Under *Smith*, the court could not consider McKinney's second statement if Hodshire's statement was interrogation. And interrogation was the key question throughout the state court proceedings. The state trial court granted Hodshire's motion to suppress after finding that Hodshire's statement was continued interrogation under *Rhode Island v. Innis*, 446 U.S. 291 (1980), and that the police therefore violated *Smith*. The Michigan Court of Appeals affirmed and specifically addressed whether Hodshire's statement was interrogation, citing both *Smith* and *Innis*. *See People v. McKinney*, 2010 WL 4226761, at *2–3. The State also asserted in its briefs that both parties cited the *Smith* rule to the Michigan Supreme Court, and noted at oral argument that the only argument made to the Michigan

Supreme Court was whether Hodshire's statement was interrogation. With that record before it, the Michigan Supreme Court was well aware that *Smith* prohibited the use of McKinney's second statement if Hodshire's statement was interrogation. So while McKinney argues that the Michigan Supreme Court never decided this question, he has failed to provide any basis to overcome the presumption that the court did, implicitly, do so.

Because we presume that the Michigan Supreme Court decided that Hodshire's statement was not interrogation, *see Johnson*, 133 S. Ct. at 1096, and McKinney has provided nothing that would convince us otherwise, we must analyze that decision under the deferential standard imposed by AEDPA.

**III**

Under AEDPA, we review a state-court merits adjudication only to determine whether it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). As the Supreme Court has repeatedly and "recently reminded the Sixth Circuit," this standard is "difficult to meet." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted). The parties agree that the Michigan Supreme Court's decision was not "contrary to" federal law, so the relevant question is whether that decision was an "unreasonable application" of clearly established Supreme Court precedent. On habeas review, clearly established law includes "only the holdings, as opposed to the dicta," of Supreme Court decisions. *Id.* (internal quotation marks and citations omitted). A habeas petitioner is thus required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *Harrington*, 562 U.S. at 103). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.

AEDPA reflects a "presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). A state court's decision is not an unreasonable application of clearly established law unless it is "objectively unreasonable, not merely wrong;

even clear error will not suffice." *White*, 134 S. Ct. at 1702 (citation and quotation marks omitted). Congress imposed such a high bar because habeas relief is an "extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621 (1998), under which "state-court decisions [are] given the benefit of the doubt." *Woodford*, 537 U.S. at 24. Habeas review is thus intended to serve only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitution for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (internal quotation marks and citation omitted). We may not grant relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

**IV**

With AEDPA's deferential standard in mind, we must determine whether the Michigan Supreme Court unreasonably applied clearly established Supreme Court precedent in deciding (1) that Detective Hodshire's statement was not interrogation; and (2) that McKinney's two statements, taken together, were not an unequivocal request for counsel.

**A**

We turn first to interrogation. *Miranda v. Arizona*, 384 U.S. 436, 473–74 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981), require police officers to cease questioning a suspect who unequivocally invokes his right to counsel. Police cannot use statements made after the suspect requests counsel if those subsequent statements are the result of further police-initiated interrogation. *Smith*, 469 U.S. at 100.

The Supreme Court defined "interrogation" in *Rhode Island v. Innis*, 446 U.S. 291. In *Innis*, police officers placed the defendant under arrest for kidnapping, robbery, and murder, advised him of his *Miranda* rights, and took him to the police station. *Id.* at 293–94. The defendant stated that he understood his *Miranda* rights and wanted to speak with an attorney. *Id.* at 294. On the way to the station, however, the officers spoke to each other about the murder weapon in front of the defendant. *Id.* One officer testified that they were "talking back and forth" and commented "that I frequent this area while on patrol and there's a lot of handicapped children running around [because a school for handicapped children was nearby], and God forbid

one of them might find a weapon with shells and they might hurt themselves." *Id.* at 294–95. The second officer "more or less concurred" with the sentiment, and at some point the defendant "interrupted the conversation" and showed the officers where he had hidden the gun. *Id.*

The Supreme Court held that the officers' statements regarding the shotgun were not interrogation. The Court defined interrogation to refer "not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Id.* at 301. That definition includes "either express questioning or its functional equivalent." *Id.* at 300–01. The Supreme Court noted that interrogation "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* at 300. The concern in *Miranda* was that the "interrogation environment" created by interrogation and custody would "subjugate the individual to the will of his examiner" and thereby "undermine the privilege against compulsory self-incrimination." *Id.* at 299 (quoting *Miranda*, 384 U.S. at 457–58).

The Supreme Court acknowledged the "subtle compulsion" inherent in the officers' conversation, but held that no interrogation occurred. "Given the fact that the entire conversation . . . consisted of no more than a few off hand remarks," the Court could not say that it was "reasonably likely that Innis would so respond." *Id.* at 303. The police did not carry on a "lengthy harangue" in the presence of the suspect, and the officers' comments were not particularly "evocative." *Id.* As such, the defendant "was not subjected by the police to words or actions that the police should have known were likely to elicit an incriminating response." *Id.*

*Innis* clearly establishes that interrogation includes express questioning or its functional equivalent—any words or actions that police should know are reasonably likely to elicit an incriminating response. *Id.* at 300–02. The Supreme Court has provided little additional guidance on what constitutes the functional equivalent of express questioning, although it has suggested that interrogation may be limited to "compelling influences, psychological ploys, or direct questioning." *Arizona v. Mauro*, 481 U.S. 520, 529 (1987) (holding that allowing suspect to speak with his wife in the presence of a police officer was not interrogation, as it did not fall into any of these categories). *Innis* thus provides a very general rule, and the Supreme Court has repeatedly emphasized that "[t]he more general the rule, the more leeway courts have in reaching

outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664; *see also Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012).

Was Hodshire's partial statement, without more, reasonably likely to elicit an incriminating response? There certainly is no sense that McKinney's will was "subjugated" to Hodshire's. *Miranda*, 384 U.S. at 457–58. Nor does Hodshire's statement seem to rise to the level of "compelling influences, psychological ploys, or direct questioning." *Mauro*, 481 U.S. at 529. Even if we read Hodshire's words to refer to his previous comments about getting McKinney's side of the story, *Innis* does not clearly establish that an uncompleted sentence fragment like Hodshire's, which only *might* refer to a previous line of questioning, is interrogation. The Supreme Court has repeatedly reminded us that "where the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Woods*, 135 S. Ct. at 1377 (citations and quotation marks omitted). We are limited to *Innis*'s general rule defining interrogation, and despite the summary nature of the Michigan Supreme Court's ruling, we must afford the court more leeway in deciding whether statements such as Hodshire's are interrogation. *See Parker*, 132 S. Ct. at 2155.

*Innis* itself provides little support for McKinney's argument. Hodshire's statement certainly does not rise to the level of the examples cited in *Innis* as the "functional equivalent" of express questioning—reverse line-ups, positing the guilt of the suspect, and the like. *See Innis*, 446 U.S. at 299. Even the holding of the case cuts against McKinney. The Supreme Court decided—on *de novo* review, no less—that the officers' discussion of the missing shotgun was not interrogation. McKinney must overcome the much more deferential standard of habeas review to prevail here. Granted, *Innis* could be distinguished because the conversation there occurred between two police officers and was not expressly directed toward the suspect. *Id.* at 294–95. Hodshire's interrupted statement was, in contrast, directed to McKinney. We must consider these differences, however, in the context of the Supreme Court's cautioning us to avoid "equating 'subtle compulsion' with interrogation." *Id.* at 303. In light of *Innis*'s general rule and its outcome, we conclude that the Michigan Supreme Court's decision was not such an unreasonable application of *Innis* that no fairminded judge could agree with it. *See Harrington*, 562 U.S. at 103.

In arguing to the contrary, McKinney focuses on only a portion of Hodshire's comment, asking us to read far too much into four innocuous words: "but like I said." McKinney would have us both assume that Hodshire is referring back to his earlier statement and treat Hodshire's interrupted and unfinished sentence as though he had repeated his entire introductory statement all over again. His argument requires too great a leap. While it appears Hodshire may have been referring to his previous statement and may even have hoped to continue along the same lines, McKinney interrupted him before he could do so. The question before us is not whether Hodshire's previous statement was interrogation—though it was headed in that direction. The question is not even whether a reasonable officer would have expected "but like I said" to elicit an incriminating response—perhaps such an officer would. The question under AEDPA is whether any fairminded jurist could conclude that Hodshire's four-word comment was not interrogation. Considering the utter lack of compulsion or compelling influence in Hodshire's comment, we can hardly treat the Michigan Supreme Court's refusal to characterize the comment as interrogation as an "extreme malfunction[] in the state criminal justice system[]." *Harrington*, 562 U.S. at 102. Under AEDPA's deferential standard, the Michigan Supreme Court did not unreasonably apply *Innis*.

Were this case before us on direct review instead of habeas, it would be a closer call. But this is habeas review, and therein lies the problem with the district court's opinion—it reads as though this case *were* on direct review. The district court, like McKinney, read too much into Hodshire's statement. *See McKinney*, 2015 WL 1219527, at *6. More problematically, the district court afforded no deference to the Michigan Supreme Court's decision, much less a "presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 24. The district court cited AEDPA as a precursor and mentioned on occasion that the state court acted "unreasonably," but it neglected to explain why, under AEDPA's congressionally mandated deferential standard, McKinney is entitled to relief.

The district court inexplicably cited two state court decisions to support its conclusion that Hodshire's statement was interrogation. *McKinney*, 2015 WL 1219527, at *6. We may not grant habeas relief based on lower-court precedent, as those decisions "do[] not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Glebe v. Frost*, 135 S.

Ct. 429, 431 (2014) (quoting 28 U.S.C. § 2254(d)(1)).  Moreover, the cases the district court cited are not helpful on their own terms.  In one, police resumed interrogation by engaging in an entire line of questioning with the suspect.  *State v. Kerby*, 833 N.E.2d 757, 767, 769 (Ohio Ct. App. 2005).  In the other, the officer asked the suspect if he wanted to confess.  *State v. Juranek*, 844 N.W.2d 791, 801 (Neb. 2014).  The fact that the district court disagreed with the Michigan Supreme Court does not justify its conclusion that the Michigan Supreme Court's decision was objectively unreasonable.  "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly."  *Woodford*, 537 U.S. at 24–25.

McKinney has failed to show that the Michigan Supreme Court committed an error "beyond any possibility for fairminded disagreement."  *Woods*, 135 S. Ct. at 1376.  Accordingly, the Michigan Supreme Court's decision that Hodshire's statement was not interrogation was not an unreasonable application of clearly established Supreme Court precedent.

**B**

We now turn to the Michigan Supreme Court's decision that McKinney's two statements, taken together, were not an unequivocal request for counsel.  *People v. McKinney*, 794 N.W.2d at 614–15 (citing *Davis v. United States*, 512 U.S. 452, 457 (1994)).

*Davis* represents the governing clearly established federal law.  In that case, the Supreme Court held that a suspect "must unambiguously request counsel."  *Davis*, 512 U.S. at 459.  But "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning."  *Id.* at 459.  The *Davis* Court held that "Maybe I should talk to a lawyer" was not an unequivocal request for counsel.  In reaching that decision, the Court declined "to extend *Edwards* and require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney."  *Id.*

Once again, we have a general rule that provides the Michigan Supreme Court "more leeway" to make a case-by-case determination.  *Yarborough*, 541 U.S. at 664.  Even with

Hodshire's interjection, McKinney's two statements came in quick succession—the video of the confession confirms that only two seconds elapsed between the statements. When McKinney said he wanted to wait for an attorney but followed by saying he wanted to talk, a "reasonable officer" could easily have "understood only that [McKinney] *might* be invoking the right to counsel." *Davis*, 512 U.S. at 459. At a minimum, a fairminded jurist could easily come to that conclusion.

Standing alone, McKinney's first statement may have been an unequivocal request for counsel. But McKinney's statement was not made in isolation. McKinney's statements, only two seconds apart, said that he wanted an attorney *and* that he wanted to talk. Considering the deference we must afford state courts under AEDPA, we hold that a fairminded judge could conclude that McKinney failed to unequivocally request counsel.

**V**

The dissent suggests a different analytical framework. It argues that, once a suspect has made any statement that could be construed as an unequivocal request for counsel, a subsequent statement, even one made immediately after without intervening interrogation, can only be used to determine whether the suspect waived the right to counsel—not whether the suspect unequivocally requested counsel in the first place.

The dissent bases its argument on the State's counsel's apparent concession at oral argument that McKinney's first statement was an unequivocal request for counsel. But no one has disputed that McKinney's first statement, *standing alone*, would be an unequivocal request for counsel. The State clarified—at oral argument and in its briefs—that McKinney did not unequivocally request counsel because of the full import of *both* of his statements. Thus, the interrogation question is paramount because, under established Supreme Court precedent, the Michigan Supreme Court could use both statements only if Hodshire's comment was *not* interrogation.

McKinney's argument has always been that the Michigan Supreme Court could not use his second statement *because Hodshire's comment was interrogation*. McKinney *never* made this waiver argument—not before the trial court, not before the Michigan Court of Appeals, not

before the Michigan Supreme Court, not before the district court, and not in his briefs on appeal—until the dissent raised it at oral argument. The parties did not brief it and were not prepared to present it, and we normally consider arguments waived if they are not raised in the district court or made on appeal. *See Fed. Trade Comm'n v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014); *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 564–65 (6th Cir. 2007) (citing *United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999)).

Even setting that rule aside, the dissent's approach is inconsistent with AEDPA's underlying theme of comity—that we should defer to the reasonable decisions of state courts— and it would bypass AEDPA deference. We would discard any concern for comity if we decided *sua sponte* to grant habeas relief based on an argument the Michigan Supreme Court never saw, particularly when that court's decision was not an unreasonable application of Supreme Court precedent. We are limited, under AEDPA, to *Smith*'s holding: "We hold only that . . . an accused's *postrequest responses to further interrogation* may not be used to cast retrospective doubt on the clarity of the initial request itself." 469 U.S. at 100 (emphasis added). That holding does not answer whether a suspect's back-to-back statements can be used to determine if he unambiguously requested counsel when the second statement is *not* a response to "further interrogation." The Supreme Court chose "not [to] decide the circumstances in which an accused's request for counsel may be characterized as ambiguous or equivocal" in *Smith, id.* at 99–100, and established the test for an unequivocal request for counsel in *Davis*, 512 U.S. at 456. We have held above that the Michigan Supreme Court's decision was not an unreasonable application of *Davis*. Under AEDPA, our review stops there.

The dissent's approach is not without merit. McKinney made two statements, and Hodshire spoke in between. McKinney's statements could be segmented, as the dissent prefers, into a request for counsel and a potential waiver. But, as our analysis above and the previous decisions in this case show, that is not the only way to view McKinney's statements. That makes the dissent's view the exact type of "fairminded disagreement" which requires deference to state courts under AEDPA. *White*, 134 S. Ct. at 1702 (quoting *Harrington*, 562 U.S. at 103).

Our role on habeas review is to evaluate a state court's decision, and we must deny relief unless it was "so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* The Michigan Supreme Court's decision to analyze this case as presented by the parties, using interrogation instead of waiver, was not such an error.[2]

## VI

Because the Michigan Supreme Court's decision was not an unreasonable application of clearly established federal law, we **REVERSE**. The case is **REMANDED** to the district court for entry of an order denying the habeas petition.

---

[2]The dissent does not conduct a waiver analysis or reach a conclusion as to whether McKinney would be entitled to relief. While we also decline to conduct a full waiver analysis, we fail to see how it would change the outcome. If a suspect who indicated he didn't want to talk without a lawyer later tells police "we can talk about things," that suspect would appear to be indicating a willingness to speak without a lawyer.

---

**DISSENT**

---

STRANCH, Circuit Judge, dissenting. "Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease. In these circumstances, an accused's subsequent statements are relevant only to the question whether the accused waived the right he had invoked." *Smith v. Illinois*, 469 U.S. 91, 98 (1984). This is not a case about an ambiguous invocation of counsel. As the government conceded at oral argument, McKinney's statement that he would "just [as soon] wait until I get a public defender or whatever" was a clear invocation of his constitutional right. Because McKinney thus unequivocally invoked the right to counsel, I would hold that only one question remains—whether or not McKinney validly waived that right. *See Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981); *Smith*, 469 U.S. at 94–95. I therefore respectfully dissent.

In *Edwards*, the Supreme Court articulated a "rigid prophylactic rule" governing accused persons in custody. *Davis v. United States*, 512 U.S. 452, 458 (1994) (citation omitted). This rule "embodies two distinct inquiries. First, courts must determine whether the accused actually invoked his right to counsel. Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith*, 469 U.S. at 95 (citations omitted). "Invocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together." *Id.* at 98. Here, focusing on whether the police continued to interrogate McKinney as opposed to whether he validly waived his asserted right does just that and is thus an unreasonable application of Supreme Court precedent.

The Supreme Court emphasized in *Smith v. Illinois* that once an accused requests counsel, as McKinney undisputedly did here, "[n]o authority, and no logic, permits the interrogator to proceed . . . on his own terms and as if the defendant had requested nothing, in the hope that the defendant might be induced to say something casting retrospective doubt on his initial statement that he wished to speak through an attorney or not at all." *Id.* at 99 (second alteration in original) (citation omitted). This prohibition is not limited to further interrogation.

Case law is clear that police may not "badger[ ] a defendant into waiving his previously asserted" right to counsel. *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991). "Once a suspect asserts the right, not only must the current interrogation cease, but he may not be *approached* for further interrogation 'until counsel has been made available to him[.]'" *Id.* at 176–77 (emphasis added). "If the police do subsequently initiate an encounter in the absence of counsel . . . the suspect's statements are presumed involuntary and therefore inadmissible[.]" *Id.* at 177.

The Supreme Court has emphasized repeatedly that a "suspect must unambiguously request counsel" and that "'a statement either is such an assertion of the right to counsel or it is not.'" *Davis*, 512 U.S. at 459 (quoting *Smith*, 469 U.S. at 97–98). The government concedes that McKinney's first statement was. Consequently, his "subsequent statements are relevant only to the question whether [he] . . . waived the right he had invoked." *Smith*, 469 U.S. at 98; *see also id.* ("[A] valid waiver 'cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation.'" (second alteration in original) (quoting *Edwards*, 469 U.S. at 484)). The question of waiver has not been fully briefed by the parties. Because I believe that it is the waiver analysis that must be undertaken in this case, however, I respectfully dissent.